The first case this morning is Meeker v. Medi-Chair. That's case number 4111004 for the appellant, John Roska, and for the appellee, Brett Kaplan. Mr. Roska, will you proceed? May it please the court and counsel, my name is John Roska. I represent Mary Meeker, the appellant here, and the plaintiff in the court below. We're asking that this court reverse the court's holding on cross motions for summary judgments that granted the motion of Medi-Chair, their summary judgment, and denied Mary Meeker's motion for summary judgment. And we'd ask that those orders be reversed and the court answer a judgment in favor of Mary Meeker. This case is about the Medi-Chair sale to Mary Meeker in her home of a $37,000 motorized wheelchair that she's never been able to use. And the parties agree that Mary Meeker never left her home in Ridge Farm, Illinois, that Medi-Chair came to her home there, demonstrated the wheelchair to her, and she signed the contract there, and that she never left her home. That sounds like a home solicitation sale. If it is a home solicitation sale, Medi-Chair was required to give Ms. Meeker notice of a three-day right to cancel because a home solicitation sale is one of the rare consumer transactions where a consumer is entitled to a three-day right to cancel. Unlike the mythology that many people think they can cancel any contract in three days. Who initially contacted the chair company? Ms. Meeker first provided her name and address to Medi-Chair at a disability exposition or fair that she was going to, or she attended in Chicago in 2005. It was a disability fair with many different displays, different vendors, different products, and she filled out an information card at that disability expo. And then in 2004 they contacted her. They demonstrated the chair to her in 2004, and at that point she decided that she was not interested. It was simply too expensive. Several years later, around 2008, after her husband passed away and she got some insurance settlement, she then contacted Medi-Chair again. I think she responded to an ad in a disability magazine, called them, and said, I'm interested, I'd still like to see your product. So Medi-Chair came and demonstrated the motorized wheelchair to her in her home at least twice in 2008 and 2009. She eventually decided she wanted to buy it. They sent her the contract. She signed it in her home, sent it to their place of business in Arizona. Immediately upon the delivery of the wheelchair, she was dissatisfied with its performance. She asked them to take it back. Eventually she contacted my office, and we sent a notice of cancellation to Medi-Chair, saying that based on the failure to give the right of cancellation, she has an extended right to cancel. We asked for a refund of the $7,000 that Ms. Meeker paid and restitution of the $29,000 that Medicare had paid, and she was willing to return the wheelchair. Medi-Chair responded by saying, no, it is our policy not to return any money. So eventually Ms. Meeker sued. The claim was eventually asserted under Arizona law because of the choice of law provision in the party's contract, and so the case was submitted to the trial court on cross motions for summary judgment on Count 1 of the claim under the Arizona Consumer Fraud Act. The parties agreed there's no material issues of fact. It's simply a question of law here. And the trial court agreed with Medi-Chair and concluded that the act did not apply, specifically because Medi-Chair, rather than soliciting Ms. Meeker, somewhat surprisingly, Mary Meeker turned out to have solicited Medi-Chair by contacting them and expressing interest. And I guess as the court said, the actively participating in the transaction and the multiple contacts and the continued interest in the product somehow changed the turn of the table so that Medi-Chair wasn't soliciting her, she was soliciting them. Therefore, the act did not apply, and Medi-Chair was not required to provide any three-day right of cancellation. When I was in law school, and it has remained so, one of my favorite rules of statutory construction was the mischief rule, which is very simple. What was the mischief that the statute was designed or the public policy was designed to correct? Now you're too young, perhaps, to remember this, but before there were trade fairs and before there were all these cards that we fill out and then we end up, you know, getting 27 requests for demonstrations of gutter guards or whatever is sold at these big events, promoted at these big events. It was door-to-door sales. The three-day right of rescission across the United States was the guy who knocks on your door and sells you, 30 years ago, an $800 vacuum cleaner. And the housewife, because we all knew housewives at those points, you know, they were going to be impulsive, would sign a contract and three days later, 24 hours later, they would decide, I don't need a vacuum cleaner like this. When the statute was designed, from my view, to correct that kind of mischief, how does this case fit? Well, I agree with you. Whatever pressure there is here, your client certainly withstood it for a number of years and thought about it and reconsidered it and looked at it and tried it out and had it demonstrated multiple times and then finally made the decision that this is what you wanted. I agree with you. The primary goal or primary aim of the statute is the high-pressure, as the editor says, nose-to-nose, high-pressure sales and a door-to-door sale. But that's not the only mischief the statute has addressed. And under the statute, it doesn't matter whether there was high-pressure sale. It doesn't matter whether there was take-it-or-leave-it. For any reason whatsoever, in a home solicitation sale, the consumer has the right to cancel. Good reason, bad reason, it doesn't matter. One of the mischiefs that the statute is designed to address is simply unsupervised salesmen out there, away from an established place of business, unsupervised by their home office, who are out there perhaps making representatives that can't be verified. So it's more than just the door-to-door high-pressure sale of the Hoover Salesman or the Fuller Brushman or whatever. So any situation of a sale taking a place away from the established place of business of the vendor, I think the statute recognizes that there's an inherent vulnerability there, not just of the high-pressure sales, but of the consumer being exploited by an unscrupulous salesman. So it doesn't have to be this door-to-door high-pressure sale. Would this case, were it decided in your favor, extend the application of these kinds of state laws and the application of the federal statute to every single sale that somehow had at its beginning, of which I assume there are many, the card, initiated in that instance by the consumer who asks for information? And sometimes the information would be a demonstration. Does that mean that... Yeah, if they come to the consumer's home... As a result of... Yes, yes. I don't think, and the federal rule is clear. The federal rule that the state statute is patterned upon is clear, that the initial solicitation, the initial contact by the consumer doesn't matter. Doesn't change things. And it's still covered by the three-day writing of cancellation. And so all that filling out of a card does is provide a lead to the direct seller. And as I somewhat tongue-in-cheek cited in my brief, the importance of leads are essential in direct sales. That's how direct salesmen know how to go out and find their customers. And so if that is not protected, if the consumer is not protected there, then I think the intent of the statute is abolished and the protections are destroyed. So no, providing the seller with a lead doesn't change anything. If they are required, if they come and sell the product in the consumer's home, then they are still covered by the Act and have to provide the three-day right of cancellation. As I was saying, the trial court held that this, in this case, Ms. Meeker solicited MediChair so that the Act doesn't apply. Did MediChair ever contact your client except to respond to a communication from your client? Well, I think the first contact was that she had filled out the lead at the Expo Fair in 2004 and they contacted her. Then she decided she didn't want to pursue it. In 2008, when she got the insurance money, she decided that she wanted to pursue it. So she looked, she lost her contact, she looked in, I think it was Multiple Sclerosis Magazine, saw an advertisement and said, I'm interested in the product. And so they came and made at least two demonstrations to her home after that. I'm not sure you answered my question. Did MediChair ever contact you? No, they never made a cold call out of the blue. The only time then they made contact with your client was when your client communicated with them first. That's correct. That's correct. But the problem with the trial court's rule is that if, and by focusing on who solicited who, that determination can only be made retrospectively, looking backwards on the whole fact. Because the trial court said, well, the initial contact in 2004, that was not enough to remove it from the Home Solicitation Act. It was the continued participation in the sale, the continued contacts, that eventually removed it from the coverage of the Act. So the problem with the trial court's rule is that you don't know at what point does it get removed from the Act. At what point does MediChair stop soliciting Mary Meeker and does she start soliciting them? Instead of that fuzzy, vague rule, this court should simply focus on where did the sale occur. If it occurred in the home, it's a home solicitation sale. That's the simplest way. The statute doesn't say that. I think it does. It's been drafted that way. What language in the statute are you pointing to that states that it should be interpreted the way you suggested? Okay, in which the seller or his representative personally solicits the sale. They came to her home. They were soliciting a sale. They wanted her to buy the product. And the buyer's agreement or offer to purchase is made at a home other than that of the person soliciting the sale. The purchase, everything occurred in Ms. Meeker's home. And the person in a home other than that of the person soliciting the sale and the agreement or offer to purchase is there given to the seller or his representative. Mary Meeker signed the contract at her home, put it in the mail, sent it off to him. I think it clearly fits into there. It was the seller soliciting the sale in a home other than that of the person soliciting the same and the buyer's agreement or offer to purchase was made, was there given to the seller or his representative. And then completing it in all or any part of the purchase price was payable installments. Mary Meeker paid two different payments. Medicare paid its installments. So there are at least three different payments. So I think that fits the definition of payable installments. So I think it does fit into the clear language of the statute. And I think that as Medicare argues, the court should simply look at the clear language of the statute and interpret it on its plain meaning. Again, by focusing on where the sale occurred, we will know prospectively whether a three-day notice of cancellation is required. Put yourself in the position of Medicare's lawyer advising them. If they ask, are we required to give notices of cancellation? That is our whole business model. We go, we do home demonstrations. We go to their home. Nobody comes to our place of business. What is a lawyer going to advise Medicare in that situation? Well, I don't know. It depends on the facts. It depends on how much contact there is between us. So I can't tell you starting out whether you need to provide the three-day right of cancellation. I can only tell you at the end of the transaction, looking backwards. That kind of fact-intensive analysis just creates uncertainty and unpredictability. That kind of a rule may help Medicare. In this case, they avoid liability. But it's not going to help them conduct their business in the future. Because they're not going to know when do we have to give a notice to consumers. Trial court in this case says we have to give it even if they contact us one time. But at some point, depending on the nature of the contacts and the active participation of the buyer, the act no longer applies and we don't have to give a notice. This court should avoid that kind of unpredictability and lack of clarity by simply adopting the simple rule of where did the sale occur. Do you think this fits the notion of what an installment contract is in the mind of a consumer or in the mind of most legislatures? It may not be. But, in fact, it was because it was payable installments. I agree. The contract did not... So 90 days or 180 days or six months or a year, same as cash, an installment contract. Well, I think if there was only one payment, I would say no, that was not made in installments. But if you... And I understand this doesn't apply to Best Buy or whoever, but if you pay half of it in six months and you don't have to pay the other half ever or until the end of the contract, but if you do, you'll get stuck with the interest. And then just before the end of the contract, to avoid paying any interest, you pay a second. I think if it's capable... But that's your choice. I think if it's capable of being paid in installments, that's payable in installments. Okay. And I think that's what's happened here. Just out of curiosity, I noticed in your complaint you asked for a judgment for the $37,000 that Medicare contributed. Should they be part of this? I wish they would be, but trying to get through to them to get them interested in this... If we ruin your favor, what happens to the $6,000 plus? Mary Meeker doesn't want it. She just wants her $7,000. And if the ruling was in the favor and Medicare was to refund the $29,000, I would hope at that point that Medicare would pick up the phone when I call and say, yes, we would like the money. I've spent hours and hours on the phone. They won't take the money back either. I mean... That would be too complicated. I wish that they would express some interest in this case. Now, in interpreting the Home Solicitation Sales Act, the court should be guided by the federal rule because the federal rule says that state laws which are consistent with the federal rule are not preempted. But if they constrict or restrict the protections, they're preempted. Now, so this court should look at the federal rule, which clearly covers this situation because it specifically says that the initial contacts by the buyer don't change anything, don't change the coverage of the act. So the federal rule clearly applies. So the court should look to the federal rule to harmonize the coverage of the different acts so that the Home Solicitation Sales Act of Arizona is read in harmony so that it provides the same degree of protection to Mary Meeker as the federal rule does. So on the count one part, the Home Solicitation Sales Act should be interpreted to apply to the situation Mary Meeker did not solicit MediChair and therefore their failure to provide the right of the cancellation was an error and that should provide her the grounds for canceling. Count two of the complaint was based directly on the federal rule that says that in a door-to-door sale you're required to give a notice of cancellation. Again, clearly the rule applies here. The problem is that the parties agree that the federal rule doesn't provide any private right of action. However, it says that the failure to give a notice of cancellation is a deceptive act of practice. That fits right into the Arizona Consumer Fraud Act, which says that, which basically prohibits deceptive acts and practices. So if it's a deceptive act in practice under the federal rule, it's a deceptive act of practice under the Consumer Fraud Act. So it's a bootstrap argument, but it fits directly into the Arizona statute to provide that relief. And I think it would provide her the same relief under count two as that she's requested in count one. So that under both claims, on both counts of Miss Meeker's claim, I think that the court's decision was incorrect and should be reversed. Interpreting the statute to provide the protection to Mary Meeker is completely consistent with the Arizona Supreme Court, which has held that the Consumer Protection Statute should be broadly interpreted to accomplish their benevolent goals. That's consistent with a lot of states and their approach to consumer protection laws. By adopting the simple rule of where did the sale occur, the court will correct the error of the trial court and provide Mary Meeker with the protection that the statute was intended. In this case, the trial court turned it around and used the Consumer Protection Statute not to protect Mary Meeker, but to protect Medichare, this out-of-state vendor that comes in and sells her a product she's never been able to use. By reversing the trial court, adopting a clear and sensible rule, and the simplest rule of interpretation, that a sale in a home is a home solicitation sale, then I think this court will get it right. So on that basis, I ask that the trial court's ruling be reversed and summary judgment be entered in favor of Miss Meeker. Thank you. Okay, thank you, counsel. You will have rebuttal. Mr. Keckley. Thank you, your honor. May it please the court and counsel. I am Brett Keckley, attorney for Medichare. Five days ago I had my 51st birthday, but I still feel young because I never heard of the mischief rule when I was in law school. Which is not to say I didn't commit mischief while in law school. Yes, the bright line, the clarity. This court has the great honor of trying to interpret another state's statute, of which there is a dearth of any authority on its interpretation. Counsel has suggested, and there was discussion about who solicited whom, and he suggested that you need to focus on where the solicitation occurred to decide who solicited whom. The problem is the Arizona statute in question doesn't just talk about solicitation. It does spell out other things that all must happen in order for the Home Solicitation Act to apply. Yes, one, the seller must solicit the sale. But the second thing is that the buyer's agreement or offer to purchase is made at a home other than that of the person soliciting. At the home other than the person soliciting. So in this case, the person is the corporation. So if the corporation is accused of soliciting, the offer or agreement to purchase has to be made someplace other than their business. And I would suggest to this court, there is no dispute of fact, that the offer or the acceptance was made at their place of business. The other thing is that the offer is there given to the seller and his representative. Where was the offer or acceptance given by Mary Meeker? It was delivered either two ways. She picks up the phone in the spring of 2009 and says, Yes, I want the chair. Okay, that's either an offer or that's an acceptance.  So where is the offer or the acceptance by Mary Meeker given? It's done by sending it to the home office in Tucson, Arizona of Medicare. So that fact would take it out of this statute. Because the offer or the acceptance was made at their home. It was not made at a place other than the home of the seller. And then, so you've had that occurring. And because you have to go through all of that interpretation, counsel's suggestion that you focus on the solicitation by where it's done, that just kind of makes the question of who solicits whom irrelevant and redundant. But it's not. It's there. It's in the first line of that statute. So that still has to be considered as something separate apart from where the offer and acceptance is made. The final part of this statute, which we think would take Medicare out of it, is that the purchase price is payable in installments. Or the debt incurred for the payment of the purchase price is payable in installments. Not is paid in installments, which we have factually here. We had payments that were made in installments. She made a couple, and Medicare made some. Payable means, I would suggest to the court, that means the obligation or the rights under the contract. The contract was silent as to how that purchase price was to be made. So unless it's got language in there about installments, then the transaction does not fall within the Home Solicitation Sales Act. The other thing... Was Medicare paid in full before the chair was delivered? Yes. Yes, it was. Yes, and when we tried to get a hold of Medicare to get this issue untangled, that was not easy to do and not successful to do. So all three of those elements have not occurred in this case so as to put Medicare within the Home Solicitation Act. And remember this. As Your Honor suggested about what mischief is being avoided, in the Federal Trade Commission's Rules 429, they did discuss what the point of all of that regulation was to be. And they said the point there is state and local officials coordinated with the Trade Commission are trying to ensure that consumers who have purchased from a door-to-door seller something they do not want, do not need, or cannot afford and thus should be accorded the right of decision. Those elements are all here. It is something that Mary Meeker wanted at least since 2004. She wanted a motorized wheelchair, something she needed. She has multiple sclerosis and something she can afford because she obtained proceeds on a life insurance policy from her husband. So the mischief here was not present in this case. She was well protected by virtue of the fact it was a long, drawn-out process, plenty of time for her to change her mind, plenty of time to go shopping elsewhere, compare prices, time if she had a problem with the sales representative to complain to the boss if she thought he was pushy. So all of those things that a statute like this is designed to protect were not violated. The mischief did not occur. Yes, but she didn't change her mind until the chair didn't work properly. Isn't that correct? That's correct. So that doesn't matter here because of the mischief factor mentioned by Justice Connect. No, and the plaintiff has not brought any kind of a claim of some warranty defect, for example. None of that's brought. That could have been a right for her if she thought it rose to the level of a defective product or a product that was not that which was represented in the contract. She could have had a claim. It wasn't brought. So maybe it's one of those things where she's just not satisfied with the chair as opposed to is there something that's been breached by the promises about the chair. And that leads to the other point here of the other claim that she did bring, which was under the Arizona Consumer Fraud Act, which talks about it's a violation for any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression, or omission of any material fact. That's very specific and that's very narrowly drawn. We have a lot of deceptions, omissions, fraud about a material fact. Is it a material fact not to have a particular provision in a contract? That's dealing with rights. This does not involve or claim is not that there was something promised about the chair which the chair did not meet, something promised about the service of the chair which was not met. No, the only allegation is that it did not have a particular contract term in there, a right of rescission. And I would suggest to the court that does not fall within the parameters of the Arizona Consumer Fraud Act. And it must be remembered that nowhere in this statutory scheme does Arizona incorporate the FTC rules, which do say it will be considered a fraud if you do not have a rescission provision in it. The statute is silent on that. There is no incorporation. And I would suggest that silence is deafening because remember we're dealing with Arizona, which is kind of a maverick state, kind of place where firearm owner identification cards can be used to register for voting but not student ID cards. So maybe Arizona is not quite as liberal in its statutory constructions in trying to protect the consumers. So for those reasons I would suggest that the trial court's ruling was correct, that summary judgment should be affirmed in favor of MediChair and against the plaintiff. Thank you. Thank you, counsel. Rebuttal, please. Well, to address the reason why the performance of the chair wasn't raised, because there was an arbitration provision she would have had to arbitrate the case in Arizona because the arbitration provision said that any complaints about performance have to be arbitrated in Arizona. The points raised by MediChair address two points that the trial court simply didn't decide. The location of the contract the court did not decide that because it specifically said deciding that the Home Solicitation Act doesn't apply because Ms. Meeker solicited them. We don't have to address where the contract was completed. We don't have to address where it was given. But if the court wants to address those, I think that in the statute, the Arizona statute about canceling clearly says that cancellation is effective upon mailing of the notice of cancellation. So if the Arizona statute makes cancellation effective upon mailing, then the contract was delivered when it was mailed by Ms. Meeker to them in Arizona. The other pernicious thing that would happen, if MediChair, if the contract is held to have been completed in Arizona because it was mailed to her, all a seller has to do is have the consumer drop the contract in the mail or the door-to-door, the hard-nosed door-to-door salesman can say, well, you sign it, I'll take it back to the office and have Mr. Big sign it. And it's not complete until my supervisor signs off on it. So that removes, because it's ads supposedly delivered at the business rather than the home, that would take it out of the coverage of the act. That kind of evasion of this kind of statute shouldn't be allowed. The contract was performed and delivered. The buyer's agreement or offer to purchase was delivered, their given, at Ms. Meeker's home. Again, the mischief doesn't have to be the high-pressure sale. I agree that while the primary focus may be people buying things that they don't want, don't need, and can't afford, that's not the only protection this act provides. And that by reversing the trial court, this court should provide the consumer protection of Ms. Meeker that was intended by the statute. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.